IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECCA I. FRANCE                                            PLAINTIFF

V.                      CIVIL NO. 16-2263

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security Administration         DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rebecca Ilene France, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.**     **Procedural Background:**

Plaintiff filed her application for DIB on July 7, 2014, and she also filed an application for SSI on July 8, 2014. Plaintiff originally alleged her disability began May 15, 2008, but she later amended the alleged onset date of disability to July 1, 2013. (Tr. 271). She alleged disability due to irritable bowel syndrome (with daily frequent bouts of diarrhea), claustrophobia, seizure disorder, arthritis of the hip, vertigo, peripheral arterial disease, osteoarthritis of the back, gastroesophageal reflux disease (GERD), severe ulcer, morbid obesity, borderline diabetes, multiple allergy problems, allergy induced asthma, double vision

1

in right eye, Bell's palsy, and vertigo. (Tr. 209, 272). An administrative hearing was held on June 22, 2015, at which Plaintiff appeared with counsel and testified. (Tr. 30-76).

By written decision dated September 24, 2015, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 16). Specifically, the ALJ found Plaintiff had the following severe impairments: asthma, disorder of the back, irritable bowel syndrome (IBS), headaches, obesity, and vertigo. (Tr. 16). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is able to occasionally climb, balance, stoop, kneel, crouch, and crawl but she must avoid concentrated exposure to pulmonary irritants such as dust, odors and gases; she must also avoid exposure to hazards such as unprotected heights and moving machinery.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform her past relevant work as a certified medication technician and riveting machine operator. (Tr. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 22, 2016. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13, 14).

**II.    Evidence Presented:**

At the time of the administrative hearing held on June 22, 2015, Plaintiff was fifty-one years of age and had obtained an associate's degree in business management. (Tr. 33).

Plaintiff's past relevant work consists of work as a certified nursing assistant, certified medication technician, and riveting machine operator. (Tr. 72).

A review of the pertinent medical evidence reflects the following. Plaintiff went to the emergency department of the West Valley Medical Center on numerous occasions for medical care. On June 4, 2008, Plaintiff complained of abdominal pain. (Tr. 316). An electrocardiogram (EKG) was unremarkable. (Tr. 317). Dr. John Mullins diagnosed her with abdominal pain and ordered an ultrasound. (Tr. 314-323). The abdominal ultrasound revealed that the liver was heterogeneous, echogenic, and attenuating probably due to fatty liver, but could also be cirrhosis, with borderline hepatomegaly. (Tr. 322).

On November 7, 2008, she reported having flank and chest pain. (Tr. 327). A chest X-ray showed no acute disease. (Tr. 331). Also, a computed tomography pulmonary angiogram (CTPA) of her chest revealed no pulmonary emboli and her lungs were clear, but there was mild hepatic steatosis and mild thoracic disc degeneration. (Tr. 332-333).

On May 6, 2009, Plaintiff was diagnosed with peptic ulcer disease. (Tr. 338-342). On June 4, 2009, she complained of asthma symptoms, and she was diagnosed with acute asthma exacerbation. (Tr. 343-348). On May 5, 2010, she was diagnosed with paronychia of the right great toe. (Tr. 349-353). On June 17, 2011, Plaintiff was diagnosed with lymphadenitis and a possible dental abscess. (Tr. 354-359). On July 2011, she was again diagnosed with chest wall pain. Dr. Eric Elliot did not order an EKG because he found a noncardiac etiology was evident, and he also doubted it was pneumonia or pneumothorax. (Tr. 360-364). Plaintiff was prescribed Prilosec and Toradol. (Tr. 364). On September 7, 2011, she complained of weakness and paresthesia. (Tr. 298). An EKG, magnetic resonance imaging (MRI) of the brain

3

and chest X-ray showed no acute problems. (Tr. 299). She was ultimately diagnosed with paresthesia. (Tr. 301).

On March 16, 2012, Plaintiff established care with Dr. Joe Llenos as her primary care physician, and she reported to him a history of allergy induced asthma. (Tr. 374-375). Three days later, Plaintiff returned for blood work, and she was diagnosed with asthma and obesity. (Tr. 372-373, 378-379). During the follow-up visit on March 26, 2012, Plaintiff reported her breathing improved with Albuterol, but she was using it daily. (Tr. 370). Dr. Llenos prescribed her Fluticasone Propionate HFA and instructed her to follow-up in six months. (Tr. 370). On July 17, 2012, Plaintiff reported a back injury with pain that radiated to her neck and triggered vertigo. (Tr. 367). She reported previously having a work-related back injury that entitled her to workers' compensation. (Tr. 367). Dr. Llenos prescribed Cyclobenzaprin for her back pain, started Meclizine for vertigo, and Loperamide for diarrhea. (Tr. 367).

On November 6, 2012, Plaintiff was seen by Ms. Jenny Stear, a physician assistant, at the Spine Institute of Idaho for her back. Two months prior, she was in a motor vehicle accident (MVA), and she reported an increase in back spasms. (Tr. 410). Plaintiff was diagnosed with anterolisthesis at L4-L5, chronic low back pain, lumbar strain secondary to recent MVA, and positional vertigo. (Tr. 412). Examination revealed that she leans slightly forward when she walks and sits, there was some tenderness over her lumbar paraspinous muscles, and she was able to toe and heel walk. (Tr. 411). Also, her tandem gait was normal, there was no joint line tenderness, edema, or erythema, and the straight leg raise test was negative. (Tr. 411). X-rays revealed some mild anterolisthesis of L4 on L5 with flexion improved with extension. (Tr. 411). Ms. Stear found an MRI was unnecessary because of no

radicular symptoms. (Tr. 412). Ms. Stear recommended physical therapy and prescribed Meclizine for the positional vertigo. (Tr. 412).

The medical evidence continues after the amended alleged onset date of July 1, 2013. On August 29, 2013, Plaintiff established care with Dr. John Freeman, and she was diagnosed with allergic rhinitis, peptic ulcer, and peripheral vertigo. (Tr. 421-422). On November 26, 2013, she complained of low back pain and was prescribed Norco and Robaxin. (Tr. 419-420). On November 30, 2013, Plaintiff complained of low back pain and a painful rash on her back that was ultimately diagnosed as shingles. (Tr. 415-418). On December 10, 2013, Plaintiff reported going to the emergency room previously for wheezing, and Dr. Freeman started her on a steroid taper. (Tr. 413-414).

On September 10, 2014, Plaintiff underwent a physical consultative examination performed by Dr. Clifford Evans. (Tr. 381-385). Plaintiff reported a history of low back injury and complained of asthma, chronic diarrhea, vertigo and possible seizures. (Tr. 381). An examination showed that she was obese at 62 inches and 250 pounds. (Tr. 382). Her blood pressure at the time was 151/92. (Tr. 382). She had good breath sounds without wheezing. (Tr. 383). She also had a full range of motion in her shoulders, elbows, wrists, hands, hips, knees, ankles, and spine. (Tr. 383). Dr. Evans found no evidence of muscle spasms or tenderness. (Tr. 383-384). The straight leg raise test was negative bilaterally and her gait was normal. (Tr. 384).

In addition, there were no sensory abnormalities, and Plaintiff had full muscle and grip strength. (Tr. 384). Plaintiff could not squat or arise from a squatting position. (Tr. 384). No edema or active ulcers were present. (Tr. 385). An X-ray of her right hip revealed no definite abnormality and joint space was preserved, but the exam was suboptimal due to her body

5

habitus. (Tr. 388-389). Also, an X-ray of Plaintiff's lumbar spine showed very slight scoliosis and possible positional and minimal hypertrophic changes. (Tr. 393-394). Plaintiff was diagnosed with colitis with an unknown etiology, vertigo, light induced and rule out seizures, migraine headaches, asthma, and obesity. (Tr. 385). Dr. Evans assessed that she would have mild limitations in her body as a whole due to frequent diarrhea, vertigo (light induced, seizures) and low back pain. (Tr. 385).

On September 12, 2014, non-examining consultant, Dr. Jerry Thomas, completed a Case Analysis. (Tr. 83-84). Dr. Thomas found that after a review of the medical evidence records, he could not identify a significant medically determinable impairment. (Tr. 84). Evidence supported the medically determinable impairment of degenerative disc disease, but Dr. Thomas found it was non-severe. (Tr. 84). The meaning of non-severe is the impairment or combination of impairments does not significantly limit physical or mental ability to do basic work activities. (Tr. 84).

On September 17, 2014, Plaintiff went to Ms. Laura Henson, A.P.N. to establish care and reported chronic low back pain from a work accident years ago. (Tr. 402). Plaintiff stated she was "feeling okay," "pain makes her uncomfortable most times," and she was "not working at this time." (Tr. 402). On November 24, 2014, a right breast ultrasound corresponded to benign appearing lymph nodes. (Tr. 431-433).

On November 4, 2014, non-examining consultant, Dr. Rita Allbright, completed another Case Analysis when the case came upon reconsideration. (Tr. 99-100). Dr. Allbright affirmed the opinion of Dr. Thomas. (Tr. 99-100).

On March 25, 2015, Plaintiff reported fainting ten days prior at Lake Fort Smith and falling creating a large bruise on her right hip with increased leg and hip pain. (Tr. 425). She

6

denied knowing why she fainted, and she stated it has happened three times in the last year, but she has not gone to the emergency room during those instances. (Tr. 425). Plaintiff was referred to a neurologist and prescribed Mobic. (Tr. 426).

On April 13, 2015, she complained of right knee pain reporting she went to the emergency room four days prior. (Tr. 424). Plaintiff reported no new fainting episodes, but stated she does get dizzy when staring at patterns. (Tr. 424). Ms. Henson diagnosed her with fainting and benign paroxysmal positional vertigo (BPPV). (Tr. 425).

On June 12, 2015, Dr. Steve-Felix Belinga, a neurologist, diagnosed her with syncope and spells. Dr. Belinga noted that nonspecific features were not sufficient to warrant seizure treatment, but he wanted to refer Plaintiff to a cardiologist and physical therapy for vestibular rehabilitation. (Tr. 434-438). An electroencephalogram (EEG) was unremarkable. (Tr. 439). An MRI of her brain showed nodes in the neck which may be hyperplastic and slightly prominent parotid glands, but was otherwise normal. (Tr. 441). A carotid ultrasound was essentially normal with the left vertebral artery showing antegrade flow, but the right vertebral artery could not be visualized. (Tr. 440). After reading the test results, Dr. William Knubley noted that this may or may not indicate stenosis or low flow in this particular vessel, and if vertebrobasilar symptomatology is suspected, a radiologic study may be helpful. (Tr. 440).

On June 24, 2015, Plaintiff was seen by Dr. Fernando Arzola, a cardiologist, and he diagnosed her with syncope, obesity, and as an ex-smoker. (Tr. 442-446). Dr. Arzola noted that her syncope was characterized by lightheadedness with right sided head movements. (Tr. 446). Dr. Arzola wrote that Plaintiff might need an angiogram of her head pending an echocardiogram and head MRI. (Tr. 444). She was also referred for a clinical cardiac electrophysiology and a Tilt Table test with carotid body massage. (Tr. 444-446). Plaintiff

7

began physical therapy on July 1, 2015, but five days later her physical therapist assessed that based on symptoms that may be associated with a heart issue, physical therapy may not be beneficial at this time. (Tr. 453-457).

On July 21, 2015, Dr. German Kamalov, a cardiologist, administered a Tilt Table test to the Plaintiff and it was positive for "vasodepressive syncope." (Tr. 458-459). Dr. Kamalov recommended liberal fluid and salt intake, avoid caffeine and alcohol, and to wear compression stockings. (Tr. 458-459). Dr. Kamalov also recommended that she avoid long standing and being present in a hot environment for a long time, and he instructed for syncope awareness. (Tr. 458-459).

On August 12, 2015, she complained of left side face swelling. (Tr. 465-467). Five days later, a left neck sonogram revealed mildly prominent lymph nodes left neck, mainly in the submandibular level region, most likely hyperplastic lymph nodes. (Tr. 461-462). The radiologist, Dr. Deland Burks, noted that if there was any significant subsequent enlargement, then further evaluation such as a biopsy may be appropriate. (Tr. 461-462).

**III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the

Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV. Discussion:

Of particular concern to the undersigned is the ALJ's treatment of Plaintiff's vasodepressor syncope impairment. Because this Court finds the ALJ erred in the evaluation of this impairment, the Court will only address this issue. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007).

In the present case, the ALJ determined Plaintiff's alleged impairment of vasodepressor syncope did not cause more than minimal limitations in her ability to perform basic work activities and is therefore non-severe. (Tr. 16). The ALJ found Plaintiff was recently diagnosed with the impairment, but the evidence fails to show that her condition would be expected to last 12 months. (Tr. 16). The only mention of the Tilt Table test exhibit in the ALJ's decision was a citation after the sentence determining that the condition would not be expected to last 12 months. (Tr. 16). There was not a detailed discussion about the results and Dr. Kamalov's recommendations subsequent to the Tilt Table test in the ALJ's decision.

The Plaintiff argues that her vasodepressor syncope is a severe impairment and the ALJ's finding of non-severe is erroneous. In response, the Defendant contends that Plaintiff's

complaints of syncope were related to her vertigo. (Doc. 14). The Defendant further argues that once an ALJ finds that a claimant has a "severe" impairment at step two, the ALJ must then consider all impairments, including those that are less than "severe" in determining a claimant's RFC. (Doc. 14). We acknowledge these statutory requirements when determining RFC, however, the Court finds the ALJ failed to evaluate the Plaintiff's vasodepressor syncope properly by not discussing the entirety of the evidence presented regarding the impairment. 20 C.F.R. § § 404.1545(a)(2), 416.945(a)(2).

A review of the record reveals that Plaintiff has had a history of reporting episodes of syncope. At the hearing, she testified to having episodes when she will "phase out." (Tr. 42). She stated that about two years ago she was walking along on the side of the road, and the next thing she knew she was walking down the middle of the road with cars honking at her. (Tr. 42). Plaintiff reported having these "spells" at least twice a week where everything would just "fade out." (Tr. 43). Plaintiff's husband also testified that she will have "spells" several times a week when she will just stare off into space, and he will have to yell at her to get her attention again. (Tr. 65-66). At the consultative examination, Dr. Evans diagnosed Plaintiff with vertigo, light induced and to rule out seizures. (Tr. 385).

During an office visit on March 25, 2015, Plaintiff reported a particular instance of fainting while at Lake Fort Smith. (Tr. 425). She fell due to the syncopal episode, and it created a large bruise on her right hip with increased leg and hip pain. (Tr. 425). She denied knowing why she fainted, and she stated she has fainted three times in the last year. (Tr. 425). At the hearing, Plaintiff testified about this incident stating she does not remember walking on a path, and the next thing she knew she was on the ground. (Tr. 43). This incident precipitated the primary care provider's referral to a neurologist. (Tr. 426). The neurologist, Dr. Belinga,

11

ordered a carotid ultrasound, and it showed the right vertebral artery could not be visualized. (Tr. 440). It was opined that this may or may not indicate stenosis or low flow in this particular vessel. (Tr. 440). Ultimately, Dr. Belinga referred her to a cardiologist, Dr. Arzola, and he decided to order a Tilt Table test. (Tr. 434-438, 442-445, 447-452).

As a result, the evidence of record suggests Plaintiff's vasodepressor syncope has existed and would be expected to continue beyond the 12-month time period required to qualify as a severe impairment. The Court would also note that while the ALJ cited to the exhibit regarding the Tilt Table test in the decision, he failed to address the subsequent recommendations made by cardiologist Dr. Kamalov. (Tr. 16). After the test, Dr. Kamalov concluded the results were positive for "vasodepressive syncope." (Tr. 458-459). His recommendations included liberal fluid and salt intake, to avoid caffeine and alcohol, and to wear compression stockings. (Tr. 458-459). In addition, Dr. Kamalov recommended that she avoid long standing and avoid being present in a hot environment for a long time. (Tr. 458-459). Dr. Kamalov also instructed for her to have syncope awareness. (Tr. 458-459).

In the decision, the ALJ found that Plaintiff had the RFC to perform light work with limitations, and she could return to her past relevant work as a certified medication technician and riveting machine operator. (Tr. 17-21).

After reviewing the record, it is clear Plaintiff's vasodepressor syncope is demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. § 423(d)(3). Evidence suggests this is a medically determinable impairment that has lasted and can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 416(i)(1)(A). Based on Dr. Kamalov's recommendations, the impairment could significantly

limit her physical ability to do basic work activities. See Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

The Court believes remand is necessary for the ALJ to more fully and fairly develop the record regarding Plaintiff's vasodepressor syncope, and re-evaluate how it applies to the RFC. On remand, the ALJ is directed to address interrogatories to Dr. Kamalov requesting that said physician review all of Plaintiff's medical records; complete a RFC assessment regarding Plaintiff's capabilities during the time period in question; and give the objective basis for the opinion so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis. This opinion should also address how long Plaintiff can stand during an eight-hour workday, for what length of time can she be present in a hot environment, or if she should avoid being in a hot environment altogether. The ALJ may also order a consultative examination, in which, the consultative examiner should be asked to review the medical evidence of record, perform examinations and appropriate testing needed to properly diagnose Plaintiff's condition(s), and complete a medical assessment of Plaintiff's abilities to perform work related activities. See 20 C.F.R. §§ 404.1517, 416.917.

With this evidence, the ALJ should then re-evaluate Plaintiff's severe impairments, RFC, and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

## V.  Conclusion:

Based on the foregoing, the undersigned recommends remand because the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have**

**fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of November, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE